Ms. Thomson and Ms. Boyle Ms. Thomson, you may proceed. Thank you, Your Honor. May it please the court, opposing counsel, Your Honors, please allow me to reserve two minutes of my time for rebuttal.  Yes, Your Honor. There are two main issues raised for argument. Was Martez Smith entitled to an evidentiary hearing and to have his motion to withdraw his guilty plea granted? And did Martez Smith have the appropriate predicate offenses to sustain a classification as a career criminal under the U.S. sentencing guidelines? Given the limited time, the argument presented today will focus on the first issue and rest on the briefs on the second. In addressing the first issue, Mr. Smith's guilty plea was the product of ineffective assistance of counsel in three main ways. First, Mr. Smith's first counsel refused to investigate the credibility of the confidential source and refused to file any motions on the topic, stating that his superior would not allow him to. This C.S. was the underlying support for the count one charge of distribution of methamphetamine and also provided additional evidence of relevant conduct at the sentencing hearing, which led to a guideline enhancement on count one. At the sentencing hearing, the sentencing court sustained Mr. Smith's objection to the amount of controlled substances for guideline purposes when the government was forced to concede that the C.S. had violated required protocols for C.S. cooperation and engaged in drug trafficking while actively working as a C.S. The government would have struggled to prevent this evidence at a trial and it would have undercut the viability of count one as this C.S. was the main factor in relation to that drug charge. Yet the district court gave no weight to this issue of C.S. credibility as a failure to investigate on the prior counsel's part. Failing to challenge the credibility of a key witness who was shown at the sentencing hearing to be unreliable is ineffective assistance of counsel. But can we back up, Ms. Thompson, because as the trial court looks at this, the motion to suppress would have been unsuccessful. That, in fact, he's pulled over, you know, there's probable cause to arrest him on the drug offense, and so there's no, not to mention, actually, probable, at least reasonable suspicion on the tint, which I'm sure just has to be enforced by officers by their personal observations before they can check the amount of tint with the little gizmo they use for that, the little machine. So the trial court says, you know, maybe he didn't file a motion to suppress, but it wasn't going to go anywhere. Your Honor, I'm afraid I don't understand your question. Well, that, in other words, that failure isn't a good reason to withdraw the guilty plea. That doesn't really show that had he continued on the trial track, he would have been any better off. Once you've pleaded guilty under oath, your answers are part of the record, and you can't withdraw it at this stage without good cause. I understand, Your Honor. So the probable cause for that traffic stop that was alleged by the government was based on his, was based on the July 19th drug buy. This stop occurred on July 27th. This is an 18-day delay in which the government's trying to argue that this probable cause, excuse me, July 9th, this traffic stop occurred on July 27th. This 18-day delay in just probable cause just dangling out there is a dangerous interpretation of the Fourth Amendment. Well, I mean, I understand your argument basically is staleness that, you know, just because he had drugs before. But this isn't forever. This is a few weeks. No one's saying three years later you can stop him on that. Of course, Your Honor. However, 18 days, two and a half weeks is plenty of time to meet with a magistrate, an impartial determiner of the facts, and get a search warrant, get an arrest warrant, get some sort of impartial determination of whether or not there would have been probable cause to execute an arrest. The fact that this traffic stop occurred based on tinted windows, which is a petty offense in Illinois, punishable by fine only, not an arrestable offense. Well, unfortunately, maybe for all of us, but the Supreme Court has made it very clear that they don't think that the pettiness of the offense makes any difference. If the officers identify something, however minor, that you're doing that's wrong, they get to pull you over for it. And so tinted windows may be in that really petty area, but Wren and at Watermeck, I think of all sorts of cases where the court has said we really don't care. Of course, Your Honor. However, it's not just the pettiness of the offense, but also the delay in time and the coercive nature in which the alleged consent to search Mr. Smith's vehicle was obtained. If we had been able to have an evidentiary hearing, evidence would have been presented, including body cam footage, which showed that at the time that this officer asked for consent to search the vehicle, Mr. Smith was on the phone with his mother getting insurance information on the vehicle. There was an affidavit that was submitted with the defendant's reply to his motion to withdraw a guilty plea in which his mother stated in this affidavit that she had heard Mr. Smith deny consent to search that vehicle. Ms. Thompson, with your limited time, do you want to address Judge Darrow's prejudice finding? Prejudice ruling, I should say. Sure. Judge Darrow essentially found that Mr. Smith had not suffered any prejudice by his counsel's failure to essentially investigate these claims or present any motions to dismiss, motions to suppress. This was clear error. If Mr. Smith had been allowed to present these motions, if his attorney had fully investigated these motions, this would have led to either a trial or potentially more pressure on the government to come to some sort of plea agreement. This wouldn't have led to the plea agreement that was, excuse me, to the plea that Mr. Smith took. He had other options and his case should have been subject to a more adversarial approach by his attorney. However, because his attorney misled him about the facts of the case, including lying to the defendant about who was responsible for this lesser included plea that he took, the defendant was unaware at the time that he took his plea that he had these options. This is no different than a case where a defendant is not informed of his entrapment defense or where he's incorrectly advised of his guidelines. So can I ask you, is it your position that because there was no evidentiary hearing, we need to approach this case as though his prior counsel was deficient in all of the ways you allege? In other words, we take the facts as he says they are? Your Honor, because there was no evidentiary hearing, Mr. Smith was not able to put his testimony on the record. However, there is sufficient facts on the record that would support these conclusions, including an October 16th motion that Mr. Smith filed wherein he requested new counsel and laid out these arguments long before he took his plea. The only reason he withdrew this motion was because his attorney told him that he was doing so much work on his case that it was his actions that led to the lesser included offense pleading. In short, the court found that this probable cause for the July 9th traffic stop was probable cause and therefore she did not need to conduct an evidentiary hearing. Denying the motion and the evidentiary hearing based on this argument circumvents the Fourth Amendment and is an abuse of discretion. In conclusion, I would state that given the arguments presented today in combination with the prior filings, Mr. Smith asked that his convictions be vacated and his case remanded to the district court for further proceedings or in the alternative for a new sentencing hearing. Thank you, Your Honors. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel, my name is Catherine Boyle on behalf of the United States. Mr. Smith here, as counsel noted, is challenging the district court's denial of his motion to withdraw his guilty plea as well as its calculation of his advisory guidelines. Both of these claims fail in light of the facts in this court's prior case law. I'll turn first to the attempt to withdraw the guilty plea. The district court did not abuse its discretion in denying Mr. Smith's motion to withdraw his guilty plea, which he bases on his claim that the plea was unknowing and involuntary because he received ineffective assistance of counsel. Frankly, he did not. Mr. Smith is unable to show that his attorney's actions were objectively unreasonable or that but for his attorney's actions the result of his case would have been different. First, Mr. Smith has not shown that any motion to suppress would have been meritorious. And on that note, I just want to briefly address some of defense counsel's focus on the claims involving the confidential sources reliability. While that was discussed in district court, it was not discussed in the opening brief. So our position here is that any such claim would be waived. Additionally, it's important here. These allegations about the confidential sources reliability, even if they weren't waived, are certainly less important when you have a recorded controlled by that was surveilled by law enforcement with plenty of additional evidence showing that this was a reliable confidential source. You have additional communication showing that the source and Smith had had prior drug transactions. And then you have additional communications again on the day of the stop, showing that a drug by was planned. So any any motion to suppress on the grounds that the traffic stop was protection and prolonged or that Mr. Smith had not consented to a search of this car wouldn't have been successful in any case because the officer had probable cause to stop and search the car. As the district court stated, there was probable cause to arrest Mr. Smith on the drug offense based on the prior controlled by. And that wasn't all. We also have a situation here where law enforcement had arranged and had reviewed communications with Mr. Smith, a buy of three ounces of methamphetamine for the same day. Mr. Smith was allegedly seen driving around as though he were trying to avoid detection. And even if, as Mr. Smith has alleged, he had not consented to the search, any subsequent search of the car would fall within an exception to the warrant requirement for vehicle searches for probable cause of criminal activity. Because the motion to suppress wouldn't have been successful, Mr. Smith didn't face prejudice from any alleged refusal to file, particularly because there was no indication here that he would have gone to trial instead of pleading guilty. And in any case, we think the record is sufficient that the law enforcement officer had probable cause to stop Mr. Smith based on his tinted windows alone, which is a violation of Illinois law. The officer didn't unreasonably prolong the stop so he could properly assess the window tint. And there's also no indication that the officer claimed his batteries were bad and his device for assessing tint. Yes, Your Honor, that's what he said. It was about 10 minutes until I believe somebody arrived to give him a device that was functioning. And explain why that's not too long under Rodriguez. Well, Your Honor, we think that that is a reasonable length of time. Obviously, it can be difficult in these cases to pick an exact number, but that's actually incredibly quick if you think about it. The officer stops this individual with tinted windows, which also sometimes are used in drug activity. And within 10 minutes, even though his device has malfunctioned, he has another device on the scene. That doesn't seem too prolonged, and I think it's within the purposes of the stop. And additionally, there's just no indication in the record that the officer coerced Mr. Smith's consent to search. And I'd also like to note that the record is really shifting on Mr. Smith's own claims regarding this alleged consent to search issue at the change of plea hearing. He takes no issue with the government's factual basis saying he had consented to a search of the car. He later says he consented to search, but it was involuntary. In another pleading, he says that he had declined permission to search. And then there's also the fact that he did that. There is a signed permission to search, but he signed with the Metun Police Department, indicating that his consent was valid. In light of all these facts, it certainly was not objectively unreasonable for Mr. Smith's attorney to decline to file a motion to suppress. And there was no reasonable probability that, but for his action, the result would have been different. And Mr. Smith's allegations that his attorney wanted him to plead guilty quickly to avoid 924C charges and was unfamiliar with his case are conclusory and unsupported by the record. Why shouldn't the record have been allowed to be expanded, though? Even if you're right, one of his primary arguments here is that the district court should have looked into this through the vehicle of an evidentiary hearing at which prior counsel could have been called. All of these questions could have been explored, and we just would have known what was happening. Yes, Your Honor. Well, the defendant's – the district court judge's decision whether to hold an evidentiary hearing in these type of circumstances is reviewed for clear error. And there is prior case law from this court – Is it clear error or abuse of discretion?  You see some cases saying abuse of discretion. And it seems odd that it would be a clear error. It seems much more like introduction of evidence trial process to me. Well, Your Honor, the case law is not perfectly clear. And it is the district court's decision to deny the withdrawal of the motion – to deny the motion to withdraw the guilty plea is certainly reviewed for abuse of discretion. But there is some indication in the case law that the decision as to whether to hold this sort of evidentiary hearing should be reviewed for clear error. But under either standard, we don't believe the court clearly erred or abused its discretion. This court has in prior cases stated that a defendant cannot just bring conclusory allegations on a blank record and obtain an evidentiary hearing in these sorts of circumstances. But why would the lawyer have had any incentive to execute an affidavit that roughly said, I did nothing for this client, I rushed him into a guilty plea, and by the way, I walked away from a good motion to suppress? I mean, the lawyer's not going to say that, right? Well, Your Honor, I would hope that an affidavit defense counsel would be honest about the prior proceedings of the case. I also think that in any case, a defendant can make any number of allegations as to what defense counsel did or didn't do, when there is nothing in the record to show that these allegations are more than conclusory and nothing to support. And in fact, in many cases here, there's an indication that the allegations are wrong. If you look at the allegation that the attorney was not familiar with the case, the defense attorney admitted, as did Mr. Smith at the change of plea hearing, that Mr. Smith had met the elements of his future crimes of conviction. But the defense attorney seemed to note the same potential factual discrepancy Mr. Smith did about whether his mask and gloves were found in his apartment or in his car. And that, to me, shows a defense attorney that has reviewed the discovery and has noted potential discrepancies, but realizes that the government's factual basis nevertheless outlines that Mr. Smith has committed the elements of each of the crimes, and for the purposes of the change of plea hearing, realizes that this minor discrepancy is not worth blowing up the plea over, frankly. So I think here, not only do we have allegations that are not supported by the record, we have allegations that are contradicted by the record. And that's true with the time pressure issue as well. Mr. Smith stated that he had time to discuss the case with his attorney. He was satisfied with his representation. And there's no indication here, again, that his attorney acted in an objectively unreasonable manner, or that had the attorney acted differently, the outcome of this case would have been different. I'll turn briefly to the guidelines issue. Mr. Smith's 2009 federal conviction for conspiracy to traffic and cocaine is a controlled substance offense, as defined in Section 4B1.2 of the Sentencing Guidelines. Mr. Smith, therefore, qualifies as a career offender under Section 4B1.1a, because he has prior convictions for both a controlled substance offense and a crime of violence. Now, you agree that there's still a circuit conflict on that question. I mean, our circuit has spoken to it, but others see this differently and think the application note went too far. Yes, Your Honor, that's correct. I believe this court's decision in Adams controls. And this court has explicitly rejected the analysis of certain other circuits, such as the D.C. Circuit in Winstead and the Sixth Circuit in Adams, when it determined that the application note didn't improperly extend the guidelines, and, in fact, really was more just a matter of showing what the wise policy would be, as opposed to adding anything that would contradict the actual guidelines. I would say that strict constructionists don't care at all about wise policy. They care about the words that are written down in the guidelines, which don't seem to include conspiracy. But, be that as it may. Yes, Your Honor, although this court did focus on whether there was a conflict and determined that there was not a conflict, as opposed to whether the word conspiracy was included in the guideline itself. Your Honor, I see I'm out of time. If there are no further questions, we'll rest on the arguments in our brief and request that you affirm the judgment of the District Court. Thank you. All right. Thank you very much. Anything further, Ms. Thompson? Oops. You need to unmute. I apologize. Thank you, Your Honor. In addressing the attorney-client relationship between Mr. Smith and his prior attorney, the record actually reflects several motions, pro se motions, that Mr. Smith filed, which details the specific issues he had with his attorney. That would be, on the docket, that would be R-12, R-23, and R-25. And R-12 was filed prior to the plea hearing. And the government argues that the plea colloquy sort of, you know, heals all issues that Mr. Smith said the correct words, therefore it doesn't matter that he didn't get effective assistance of counsel. However, in a lot of these cases, Mr. Smith didn't realize that he had been misled and lied to by his attorney until after the plea. He couldn't have knowingly entered a plea when he didn't even know the full extent to which he wasn't receiving the advocacy he needed. Further support of this misleading conduct can be found in the docket entries and the pro se motions that Mr. Smith has filed. And a motion to withdraw his guilty plea properly raised these claims, but he never received the opportunity to have a hearing on those merits. I would also like to address briefly the confidentiality, the, excuse me, the confidential informant issue in reference to the waiver issue. The CS issue was mentioned on pages 4, 7, 8, and the contents of the motions to suppress that was potentially filed was mentioned on page 10 of the defendant's initial brief to this court. Therefore, it has not been waived. It was further fleshed out in the defendant's reply brief. I see I'm short of time. So I would conclude again by asking this court to remand to vacate his convictions and remand this case to the district court for further proceedings or in the alternative for a new sentencing hearing. Thank you, Your Honors. Thank you very much. Thanks as well to the government. The court will take this case under advisement. And thank you as well. You took this case by appointment, Ms. Thompson? Yes, Your Honor. We appreciate your efforts on behalf of the client and also for the court. So thanks to everybody. This case is taken under advisement, and the court will be in recess.